UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EDUARDO JIMENEZ,                        )        No. CV 08-1572-RC
                                        )
            Plaintiff,                  )
                                        )        OPINION AND ORDER
      v.                                )
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )
_____)

     Plaintiff Eduardo Jimenez filed a complaint on March 12, 2008,

seeking review of the Commissioner's decision denying his applications

for disability benefits.  On August 26, 2008, the Commissioner

answered the complaint, and the parties filed a joint stipulation on

September 30, 2008.


                            **BACKGROUND**

                                **I**

     On June 20, 2002, plaintiff applied for disability benefits under

Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming

an inability to work since August 15, 2000, due to right shoulder,

lower back and right knee injuries.  Certified Administrative Record ("A.R.") 86-88, 90.  The plaintiff's application was initially denied on September 5, 2002, and was denied again on December 27, 2002, following reconsideration.  A.R. 66-74.  The plaintiff then requested an administrative hearing, which was held on January 12, 2004, before Administrative Law Judge Peggy M. Zirlin ("the ALJ").  A.R. 75, 2344-67.  On April 22, 2004, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 606-17, 1718-29.  The plaintiff appealed this decision to the Appeals Council, which remanded the matter to the ALJ on March 11, 2005.[1]  A.R. 618-35, 1684.

On March 13, 2007, the ALJ held a new administrative hearing, which considered both the Title II and SSI applications.  A.R. 27, 2368-97.  On April 20, 2007, the ALJ again found plaintiff is not disabled.  A.R. 24-49, 1685-1710, 1730-55.  The plaintiff appealed this decision to the Appeals Council, which denied review on December 18, 2007.  A.R. 14-22, 1682-83.

## II

The plaintiff, who was born on October 12, 1956, is currently 52 years old.  A.R. 86, 1562.  He has a GED, and has previously worked in a warehouse and as a butcher.  A.R. 91, 96.

---

[1]  In remanding the matter to the ALJ, the Appeals Council noted that plaintiff had also filed an application for disability benefits under the Supplemental Security Income program ("SSI") of Title XVI of the Act on December 15, 2004.  A.R. 635, 1568-72, 1982-86.  Further, plaintiff had also reapplied unsuccessfully for Title II disability benefits on December 15, 2004, A.R. 1354-58, 1562-67, 1976-1981, and this application was denied on May 18, 2005.

On or about August 15, 2000, plaintiff injured himself at work, hurting his back and legs.[2]  A.R. 249, 283.  On April 5, 2002, Thomas A. Curtis, M.D., a psychiatrist, examined plaintiff, psychologically tested him, diagnosed him as having an unspecified depressive disorder with anxiety and psychological factors affecting medical condition, and found plaintiff was temporarily totally disabled.  A.R. 281-93, 459-73, 552-64.[3]  Plaintiff continued to receive treatment from Dr. Curtis, including psychotherapy and medication.  A.R. 672, 875, 1002-42, 2168-79.

On January 13, 2004, Dr. Curtis opined plaintiff remained temporarily totally disabled, he would likely be precluded from returning to his pre-injury occupation due to his psychiatric condition, and he remained too depressed and anxious to concentrate on vocational rehabilitation.  A.R. 550-51, 1038-39.  On February 24, 2004, Dr. Curtis opined plaintiff had "marked" impairment in his ability to understand, remember, and carry out short, simple instructions, and "extreme" limitations in his ability to: understand, remember, and carry out detailed instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors, and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a

---

[2]  Since plaintiff does not challenge the ALJ's assessment of his physical condition, the Court will summarize only those medical records addressing plaintiff's mental condition.

[3]  The administrative record contains multiple copies of certain documents, including some of Dr. Curtis's reports.  The Court will not cite each instance these documents appear in the record.

routine work setting.[4]  A.R. 565-66, 857-58.  Dr. Curtis further found plaintiff continued to experience depression and anxiety, as well as lack of concentration and attention and memory impairment.  A.R. 565, 857.  Dr. Curtis determined plaintiff was totally disabled since he could not tolerate the stress of a work environment, interact and communicate effectively, or make decisions.  A.R. 566, 858.

On May 3, 2004, Dr. Curtis reexamined plaintiff and again conducted psychological testing, and determined plaintiff was permanent and stationary.[5]  A.R. 666-94, 869-97.  Dr. Curtis opined plaintiff had a "severe" impairment in his ability to comprehend and follow instructions, perform simple and repetitive tasks, maintain work pace, perform complex and varied tasks, relate to other people, influence people, make generalizations, evaluations, or decisions, and accept and carry out responsibility.  A.R. 689-90, 892-93.  Dr. Curtis also stated:

> If [plaintiff] were to attempt any normal or regular work
> routine, his mental condition would likely rapidly worsen to
> the point of totally incapacitating impairment in all eight

---

[4]  In this context, "marked" means "[t]he ability to function is severely limited but not precluded[,]" and "extreme" means "[t]here is no useful ability to function in this area." A.R. 565.

[5]  "A disability is considered 'permanent and stationary' for workers' compensation purposes 'after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time.'"  Booth v. Barnhart, 181 F. Supp. 2d 1099, 1103-04 n.3 (C.D. Cal. 2002) (citations omitted).

1      areas of emotional functioning [set forth above].  Under

2      such conditions, his pain, insomnia, depression,

3      frustration, agitation, fatigue, anxiety and psychogenic

4      somatization would preclude employment on an indefinite

5      basis.  Because of extreme depressive mental disorder with

6      loss of reality perception, [the plaintiff] would likely be

7      precluded from competition in the labor market.  There have

8      been hallucinatory-like experiences, auditory

9      hallucinations, psychotic anxieties, confusional mental

10     states, paranoid ideation, somatic delusions, reality

11     distortions and mental disorganization such that he could

12     not be relied upon to consistently comprehend and follow

13     instructions, perform routine duties, perform complex

14     duties, and regularly get to work, stay at work and keep

15     working on the job.  There have been additional depressive

16     psychiatric symptoms with emotional peculiarities and

17     elements of interpersonal mistrust such that [plaintiff]

18     could not be relied upon to normally relate to people and

19     influence people on the job.  He could not assume

20     responsibility for direction, control or other management

21     duties.

22

23  A.R. 688-89, 891-92.

24

25      On February 7, 2005, and February 12 and May 21, 2007, Dr. Curtis

26  again determined plaintiff was permanent and stationary.  A.R. 1146-

27  47, 1526-27, 1940-41, 2167.  On June 29, 2005, William W. Kaiser,

28  //

1   Ph.D., a psychologist, opined plaintiff had "moderate"[6] limitations in

2   his ability to understand and remember short, simple instructions;

3   "marked" impairments in his ability to carry out short, simple

4   instructions, make judgments on simple work-related decisions,

5   interact appropriately with supervisors and co-workers, and respond

6   appropriately to changes in a routine work setting; and "extreme"

7   limitations in his ability to understand, remember, and carry out

8   detailed instructions, interact appropriately with the public, and

9   respond appropriately to work pressures in a usual work setting.  A.R.

10  1372-74, 1413-15, 2181-83.  Dr. Kaiser further opined plaintiff was

11  unable to work because he was beset by depression and anxiety,

12  irritable and withdrawn, and was unable to concentrate, focus on

13  tasks, remember things, or communicate effectively with co-workers.

14  Id.

15

16      On April 19, 2005, Ernest A. Bagner, III, M.D., a psychiatrist,

17  examined plaintiff and diagnosed him with an unspecified depressive

18  disorder and determined plaintiff's Global Assessment of Functioning

19  ("GAF") was 60.[7]  A.R. 1389-92, 1776-79.  Dr. Bagner concluded:

20  //

21

22  _____

23      [6]  "Moderate" means "[t]here is a moderate limitation in
    this area, but the individual is still able to function
24  satisfactorily."  A.R. 1372, 1413.

25      [7]  A GAF of 60 indicates "[m]oderate symptoms (e.g., flat
    affect and circumstantial speech, occasional panic attacks) or
26  moderate difficulty in social, occupational, or school
    functioning (e.g., few friends, conflicts with peers or co-
27  workers)."  American Psychiatric Association, Diagnostic and
    Statistical Manual of Mental Disorders, 34 (4th ed. (Text
28  Revision) 2000).

6

1   [plaintiff] would have mild limitation interacting with

2   supervisors, peers and the public and maintaining

3   concentration and attention.  He would have mild to moderate

4   limitations completing simple tasks and completing a normal

5   workweek without interruption.  He would have moderate

6   limitations handling normal stresses at work.  H[e] would

7   have moderate to marked limitation completing complex tasks.

8

9   A.R. 1392, 1779.

10

11   On May 5, 2005, Melvin Morgan, M.D., a nonexamining psychiatrist,

12   opined plaintiff had an unspecified depressive disorder that causes

13   "mild" restriction in the activities of daily living, "mild"

14   difficulty maintaining social functioning, "moderate" difficulties

15   maintaining concentration, persistence or pace, and has caused "one or

16   two" episodes of decompensation.  A.R. 1393-1406.  Dr. Morgan

17   concluded plaintiff is capable of at least simple repetitive tasks.

18   A.R. 815, 1405, 1409.  Dr. Morgan also opined plaintiff is:

19   "moderately-to-markedly" limited in his ability to understand,

20   remember and carry out detailed instructions; "moderately" limited in

21   his ability to maintain attention and concentration for extended

22   periods, perform activities within a schedule, maintain regular

23   attendance, and be punctual within customary tolerances, and respond

24   appropriately to changes in the work setting; and "mildly-to-

25   moderately" limited in his ability to remember locations and work-like

26   procedures, understand, remember and carry out very short and simple

27   instructions, and complete a normal work day and work week without

28   interruptions from psychologically-based symptoms and to perform at a

7

1  consistent pace without an unreasonable number and length of rest

2  periods, but was otherwise not significantly limited.  A.R. 1407-10.

3

4                              **DISCUSSION**

5                                  **III**

6       The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

7  review the Commissioner's decision denying plaintiff disability

8  benefits to determine if his findings are supported by substantial

9  evidence and whether the Commissioner used the proper legal standards

10  in reaching his decision.  <u>Sam v. Astrue</u>, 550 F.3d 808, 809 (9th Cir.

11  2008) (per curiam); <u>Vasquez v. Astrue</u>, 547 F.3d 1101, 1104 (9th Cir.

12  2008).

13

14      The claimant is "disabled" for the purpose of receiving benefits

15  under the Act if he is unable to engage in any substantial gainful

16  activity due to an impairment which has lasted, or is expected to

17  last, for a continuous period of at least twelve months.  42 U.S.C. §§

18  423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

19  "The claimant bears the burden of establishing a prima facie case of

20  disability."  <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995),

21  <u>cert.</u> <u>denied</u>, 517 U.S. 1122 (1996); <u>Smolen v. Chater</u>, 80 F.3d 1273,

22  1289 (9th Cir. 1996).

23

24      The Commissioner has promulgated regulations establishing a five-

25  step sequential evaluation process for the ALJ to follow in a

26  disability case.  20 C.F.R. §§ 404.1520, 416.920.  In the **First Step**,

27  the ALJ must determine whether the claimant is currently engaged in

28  substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).

Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  <u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4).  Third, after rating the

degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff "has not engaged in substantial gainful activity since August 15, 2000, the alleged onset date." (Step One).  The ALJ then found plaintiff has the severe impairments of "status post medial meniscectomy and synovesctomy [sic] to repair a tear in the right knee, recurring discogenic pain and left shoulder supraspinatus bursal irregularities"; however, plaintiff's mental impairment is not severe.[8]  (Step Two).  The ALJ also found plaintiff does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff cannot perform his past relevant work.  (Step Four).  Finally, the ALJ found plaintiff is able to perform a significant number of jobs in the

---

[8]   In reaching this conclusion, the ALJ found plaintiff has no "more than mild limitations in activities of daily living, social functioning, concentration, persistence, or pace," and he experienced no episodes of decompensation.  A.R. 41.

1  national economy; therefore, he is not disabled.  (Step Five).

2

3                                    **IV**

4       The Step Two inquiry is "a de minimis screening device to dispose

5  of groundless claims."  Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433

6  F.3d 683, 687 (9th Cir. 2005).  The Supreme Court has recognized that

7  including a severity requirement at Step Two of the sequential

8  evaluation process "increases the efficiency and reliability of the

9  evaluation process by identifying at an early stage those claimants

10 whose medical impairments are so slight that it is unlikely they would

11 be found to be disabled even if their age, education, and experience

12 were taken into account."  Bowen v. Yuckert, 482 U.S. 137, 153, 107

13 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987).  However, an overly

14 stringent application of the severity requirement violates the Act by

15 denying benefits to claimants who do meet the statutory definition of

16 disabled.  Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

17

18      A severe impairment or combination of impairments within the

19 meaning of Step Two exists when there is more than a minimal effect on

20 an individual's ability to do basic work activities.  Webb, 433 F.3d

21 at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see

22 also 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or

23 combination of impairments is not severe if it does not significantly

24 limit [a person's] physical or mental ability to do basic work

25 activities.").  Basic work activities are "the abilities and aptitudes

26 necessary to do most jobs," including physical functions such as

27 walking, standing, sitting, lifting, pushing, pulling, reaching,

28 carrying or handling, as well as the capacity for seeing, hearing and

1   speaking, understanding, carrying out, and remembering simple

2   instructions, use of judgment, responding appropriately to

3   supervision, co-workers and usual work situations, and dealing with

4   changes in a routine work setting.   20 C.F.R. §§ 404.1521(b),

5   416.921(b); Webb, 433 F.3d at 686.   If a claimant meets his burden of

6   demonstrating he suffers from an impairment affecting his ability to

7   perform basic work activities, "the ALJ *must* find that the impairment

8   is 'severe' and move to the next step in the SSA's five-step process."

9   Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (emphasis in

10  original); Webb, 433 F.3d at 686.

11

12      Here, both Drs. Curtis and Kaiser, the only treating or examining

13  physicians to offer an opinion on plaintiff's mental condition,

14  concluded plaintiff has a severe mental impairment and is unable to

15  work due to that impairment.   A.R. 565-66, 688-90, 857-58, 891-93,

16  1146-47, 1526-27, 1940-41, 2167.   Additionally, Dr. Bagner determined

17  plaintiff has a GAF of 60, which "suggests . . . a mental impairment

18  that is 'severe' in nature."   Bennett v. Barnhart, 264 F. Supp. 2d

19  238, 255 (W.D. Pa. 2003); see also Samuel v. Barnhart, 295 F. Supp. 2d

20  926, 952 (E.D. Wis. 2003) (examining physicians' opinions "show that

21  plaintiff had a severe impairment" when these physicians found

22  plaintiff's GAF was between 51-60, which meant plaintiff's "symptoms

23  were moderate, and that he would have moderate difficulty in social,

24  occupational or school functioning").[9]   Moreover, Dr. Morgan, a

25  _____

26      [9]  Nevertheless, Dr. Bagner determined plaintiff has mild-
    to-moderate limitations completing simple tasks and completing a
27  normal workweek without interruption, moderate limitations
    handling normal stresses at work, and moderate-to-marked
28  limitation completing complex tasks.   A.R. 1389-92, 1776-79.

nonexamining psychiatrist, found plaintiff has a depressive disorder, which is a severe condition, and opined plaintiff has "moderate" difficulties maintaining concentration, persistence or pace, has had "one or two" episodes of decompensation, and is: "moderately-to-markedly" limited in his ability to understand, remember and carry out detailed instructions; "moderately" limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and respond appropriately to changes in the work setting; and "mildly-to-moderately" limited in his ability to remember locations and work-like procedures, understand, remember and carry out very short and simple instructions, and complete a normal work day and work week without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  A.R. 1393-1410.

The ALJ rejected the opinions of Drs. Curtis, Kaiser, Bagner and Morgan, and instead relied on the 2002 opinion of nonexamining physician Patrick Ryan, who opined that plaintiff was depressed but his depression was not expected to remain severe for 12 months.  A.R. 40-41.  However, since Dr. Ryan's 2002 opinion was based solely on Dr. Curtis's medical records, A.R. 419, his opinion does not constitute substantial evidence to support the ALJ's Step Two determination that plaintiff does not have a severe mental impairment.  See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("When [a nontreating] physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the [nontreating] physician are not 'substantial evidence.'");

Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) ("The non-examining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician.").

Apart from relying on Dr. Ryan's opinion, the ALJ rejected Dr. Curtis's opinions because "the record does not support 12 months of psychiatric treatment" in that "Dr. Curtis' treatment notes of the [plaintiff] do not reflect 12 months of individual and/or group therapy." A.R. 40-41. However, there is a simple explanation for this. On January 12, 2005, when the Commissioner requested Dr. Curtis's medical records, only Dr. Curtis's medical records from January 2004 through 2005 were sought -- although Dr. Curtis first saw plaintiff in April 2002. A.R. 281-93, 1001. Therefore, Dr. Curtis provided the Commissioner with only his treatment notes from January 8, 2004, through November 22, 2004. A.R. 1002-42. However, Dr. Curtis's billing records show plaintiff's treatment began on April 18, 2002, and continued through at least April 24, 2007. A.R. 2168-79. Therefore, this reason also does not support the ALJ's Step Two determination that plaintiff's mental impairment is not severe.

Finally, the ALJ noted that when plaintiff received treatment at the Para Latino Medical Center in June and July 2005, Luis Alejandro Perez, M.D., noted plaintiff had no psychiatric complaints and found plaintiff to be alert and oriented to time, place and person with appropriate mood and affect. A.R. 1425-31. However, since plaintiff sought treatment from Dr. Perez for physical complaints, and not his

14

mental state, it is not surprising plaintiff did not discuss any

psychiatric complaints with Dr. Perez.  Cf. Widmark v. Barnhart, 454

F.3d 1063, 1068 (9th Cir. 2006) ("It is reasonable . . . to expect

that [plaintiff's] . . . physicians focused their attention on the

subject of his complaint, i.e., his neck and back.  But just as no

reasonable person would expect a podiatrist seeing a patient who

complains of foot problems to thoroughly examine the full range of

that patient's hearing, it is unreasonable to expect [plaintiff's]

. . . physicians undertook a thorough range of motion evaluation of

[plaintiff's] right thumb.").

    For all these reasons, the ALJ's Step Two determination that

plaintiff does not have a severe mental impairment is not supported by

substantial evidence in the record.

V

    When the Commissioner's decision is not supported by substantial

evidence, the Court has authority to affirm, modify, or reverse the

Commissioner's decision "with or without remanding the cause for

rehearing."  42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072,

1076 (9th Cir. 2002).  "Remand for further administrative proceedings

is appropriate if enhancement of the record would be useful."  Benecke

v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, remand is

//

//

//

//

//

15

1  appropriate.[10]   <u>Edlund</u>, 253 F.3d at 1160; <u>Montijo v. Sec'y of Health &</u>

2  <u>Human Serv.</u>, 729 F.2d 599, 602 (9th Cir. 1983) (per curiam).

3

4                                   **ORDER**

5      IT IS ORDERED that: (1) plaintiff's request for relief is granted

6  and defendant's request for relief is denied; and (2) the

7  Commissioner's decision is reversed, and the action is remanded to the

8  Social Security Administration for further proceedings consistent with

9  this Opinion and Order, pursuant to sentence four of 42 U.S.C. §

10  405(g), and Judgment shall be entered accordingly.

11

12  DATE:  <u>February 23, 2009</u>        <u>/S/ Rosalyn M. Chapma</u>

13                                         ROSALYN M. CHAPMAN
                                           UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25
   _____

26      [10]   Having reached this conclusion, it is unnecessary to
   reach plaintiff's other argument, which would not warrant further
27  relief than herein granted.

28  R&R-MDO\08-1572.mdo
    2/23/09